UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TRUSTEES OF THE LOCAL 888 HEALTH FUND,**<br><br>   **Plaintiff,**<br><br>     v.<br><br>**KISSLER & CO., INC.,**<br><br>   **Defendant.** | Civ. No. 14-8097 (WJM)<br><br>**OPINION** |

   Plaintiff Trustees of the Local 888 Health Fund (the "Trustees") bring this action against Defendant Kissler & Co., Inc., ("Kissler") for delinquent contributions under a Collective Bargaining Agreement. This matter comes before the court on Kissler's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court decides this motion without oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

**I. BACKGROUND**

   Kissler and Local 888, United Food and Commercial Workers International Union, (the "Union") were party to a Collective Bargaining Agreement ("CBA"). (Plaintiff's Complaint ("Complaint") ¶ 10, ECF No. 1). As part of its contractual obligations under the CBA, Kissler was required to make health and welfare contributions pursuant to a rate schedule. (*Id.* ¶ 11). The health and welfare contributions are made by Kissler to the Local 888 Health Fund, which then provides the benefits to eligible employees, retirees, and their dependents. (*Id.* ¶ 6). The Fund—through its Trustees—is authorized to collect the contribution benefits from Kissler and may also maintain suit against the company if payments are delinquent. (*Id.*).

   The Trustees allege that Kissler was delinquent in remitting funds in the amount of $98,970.50 for the period of January 2011 through June 2013. (*Id.* ¶ 13). The Trustees also allege that upon conducting an audit in April 2013 it was

1

revealed that Kissler failed to properly remit $30,621.00 for the period of January 2004 to December 2010.  (*Id.* ¶ 18).  With interest of 6% and auditor's fees, the Trustees allege that Kissler owes the Local 888 Health Fund $46,319.84.  (*Id.*)  On December 29, 2014, the Trustees filed the instant action against Kissler to recover the delinquent contributions and for liquidated damages, interest, and attorney's fees.  (*Id.* ¶ 26).

## II.     JURISDICTION

The Trustees assert an ERISA violation, under 29 U.S.C. § 1145, and a breach of contract claim for failure to make contractually-required contributions.  (*Id.* ¶¶ 19, 23).  This Court exercises jurisdiction over the Trustees' ERISA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 1132 and exercises supplemental jurisdiction over the breach of contract claim pursuant to 28 U.S.C. § 1367.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party "bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  When considering a 12(b)(6) motion, the Court must accept as true all allegations in the Complaint, and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.  *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Thus, the factual allegations in the complaint must be sufficient to raise a right to relief above the speculative level, such that it is "plausible on its face."  *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

2

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility."  *Id.*  "The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  *In re Rockefeller Center Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002).

"In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'"  *Banco Popular v. Ghandi*, 184 N.J. 161 (2005) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004), *cert. denied*, 543 U.S. 918, (2004)).  A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint."  *Lum*, 361 F.3d at 222 n.3 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document."  *See In re Pension Benefit Guar. Corp.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered.  *See Burlington Coat Factory*, 114 F.3d at 1426.  In this case, since the Trustees failed to attach any exhibits to their Complaint, the Court will consider the Collective Bargaining Agreement, (Declaration of Karen Mizrahi ("Mizrahi Dec'l"), Ex. A, ECF No. 10-1), the Memorandum of Understanding ("MOU"), (Declaration of Michael S. Horn ("Horn Dec'l"), Ex. 3, ECF No. 9-3), and the Local 888 Health Fund, Local 888 Pension Fund and the UFCW Local 888 and Employers 401(k) Plan's Joint Policy for Collection of Delinquent Contributions (the "Collection Policy"), (Horn Dec'l, Ex. 2, ECF No. 9-2), in order to evaluate whether the Trustees' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## IV. DISCUSSION

### A. Claims Under the Collective Bargaining Agreement

---

[1] Copies of the MOU and the Collection Policy were also attached to the Trustees' Opposition to Motion to Dismiss. The Court will not consider any of these documents as part of the Complaint, because "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

3

Kissler's primary argument to dismiss the Trustees' claim for $46,319.84 under the CBA is that the matter was previously settled by the parties. (Defendant's Motion to Dismiss ("Dismiss Brief") at 8, ECF No. 9-4). Consequently, Kissler argues that this Court does not have subject-matter jurisdiction over the claim, as enforcement of a settlement agreement—even if it arises under ERISA—is a matter for state courts. (*See id.*)  Though the parties did not sign a settlement agreement nor a release of claims, Kissler argues that the communications between the attorneys effectively settled the claim. (*See id.* at 10).  The Trustees contend, however, that the claim could not have been settled, as the Trustees' approval is required prior to settlement and such approval was not given. (Plaintiff's Opposition to Motion to Dismiss ("Opposition Brief") at 12, ECF No. 10).

Under New Jersey law, the general rule is that unless the client specifically authorizes an attorney, a client's consent is necessary to settle the case. *See Amatuzzo v. Kozmiuk*, 703 A.2d 9, 12 (N.J. Super. Ct. App. Div. 1997).  New Jersey courts apply the principles of agency law to determine whether an attorney has authority to bind a client to a settlement agreement. *McDonnell v. Engine Distributors*, No. CIV.A. 03-1999, 2007 WL 2814628, at *8 (D.N.J. Sept. 24, 2007) *aff'd*, 314 F. App'x 509 (3d Cir. 2009).  Thus, an attorney may settle a lawsuit on behalf of a client only if the attorney has either actual (express or implied) or apparent authority to do so. *See id.*  The attorney-client relationship alone does not confer upon the attorney the authority to settle a case. *See Jersey City v. Roosevelt Stadium Marina, Inc.*, 509 A.2d 808, 815 (N.J. Super. Ct. App. Div. 1986).  The burden of proving an agency is on the party asserting it. *See Newark Branch, NAACP v. Township of West Orange, N.J.*, 786 F.Supp. 408, 423 (D.N.J. 1992).

Apparent authority may be created as to a third person by "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Jennings v. Reed*, 885 A.2d 482, 490 (N.J. Super. Ct. App. Div. 2005) (quoting Restatement (Second) of Agency § 27 (1958)).  In the context of private litigation, apparent authority exists "where the client, by words or conduct communicated to the adverse attorney, engenders a reasonable belief that the attorney possess authority to conclude a settlement . . . ." *Amatuzzo*, 703 A.2d at 12.  "Apparent authority may even be found where the

4

principal denies having granted authority to settle, but nevertheless places the attorney in a position where a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question." *Maiellano v. World Travel Grp., Inc.*, No. 06-5835 (JLL), 2009 WL 605264, at *3 (D.N.J. Mar. 9, 2009) *report and recommendation adopted*, 2009 WL 774483 (D.N.J. Mar. 24, 2009). "However, the attorney's words or acts alone are insufficient to cloak the attorney with apparent authority." *Amatuzzo*, 703 A.2d at 12.

In the instant matter, Trustees' counsel had neither actual nor apparent authority to conclude a settlement. The Collection Policy explicitly states that while legal counsel "is authorized to enter into settlement negotiations," "any settlement which waives or compromises the amount owed (including interest, liquidated damages and attorneys' fees if assessed) must be approved by the [Board of Trustees]." (Horn Dec'l, Ex. 2 at 36). Kissler asserts that the parties settled the Trustees' claim of $46,319.84 for $1,775.81. (Horn Dec'l ¶ 8). By the terms of the Collection Policy, Trustees' counsel did not have actual authority to conclude such a settlement that would waive amounts owed by the employer.

Neither was the Trustees' counsel placed "in a position where a person of ordinary prudence" would be "justified in presuming" that counsel could conclude such a settlement. *Maiellano*, 2009 WL 605264, at *3. While reliance by a third party is one essential component of apparent authority, such reliance must be reasonable under the circumstances. *See Henry v. Lynch*, 169 F. App'x 102, 105 (3d Cir. 2006). Kissler and its counsel are sophisticated parties who were privy to the Collection Policy that limited the Trustees' counsel's authority to settle— evidenced by the fact that Kissler attached this Policy as an exhibit to its motion to dismiss. (*See* Horn Dec'l ¶ 4). Viewed in a light most favorable to the Trustees, the explicit language of the Collection Policy negates any reasonable belief or reliance from Kissler or its counsel justifying the presumption that opposing counsel possessed the authority to conclude a settlement waiving amounts owed. Since the Court finds that Kissler has failed to demonstrate that the Trustees imbued their counsel with either actual or apparent authority to settle the claim for $46,319.84, this Court must deny Kissler's motion to dismiss this claim.[2]

---

[2] Because the Court does not find that the claim arising under the CBA has been settled by the parties, the Court continues to have subject-matter jurisdiction over the claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132. *See supra* at 2. In addition, the Court is unable to make a statute of limitations determination at this time based on the

### B. The Memorandum of Understanding

"[T]he meaning of a collective bargaining agreement may be determined by applying general rules of contract law as long as federal labor law does not provide a conflicting rule." *Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning*, 934 F.2d 35, 41 (3d Cir. 1991). To establish a breach of contract claim, a plaintiff has the burden of showing: "(1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach." *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11–896, 2012 WL 924385, at *3 (D.N.J. Mar.19, 2012). Under New Jersey law, parties "may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking." *Comerata v. Chaumont, Inc.*, 145 A.2d 471, 475 (N.J. Super. Ct. App. Div. 1956).

The Trustees have not plead sufficient facts to establish the elements of a claim for breach of contract. The Complaint alleges that "pursuant to the CBA, [Kissler] is liable to Plaintiffs in the minimum amount of $98,970.50." (Complaint ¶ 17). However, the Complaint fails to note that the CBA expired in 2009, and that the Trustees' cause of action arises instead from an alleged MOU, delineating increased contributions to the medical plan. (*See* Dismiss Brief at 7). The Trustees do not oppose these facts regarding their claim, stating that "the MOU operates as a CBA." (Opposition Brief at 9). By not stating on its face or attaching as an exhibit the correct agreement giving rise to the alleged breach, the Trustees failed to plead the bare minimum elements for a breach of contract claim.

Furthermore, even if this Court were to overlook the fact that the Trustees plead an alleged breach of the wrong contract, the Trustees have not set forth sufficient facts demonstrating that the informal and unsigned MOU is a valid contract. The question of whether a party entered into a collective bargaining agreement is a question of contract interpretation. *See Sheet Metal Workers*, 934 F.2d at 41. Contrary to the Trustees' assertion in their Opposition Brief, the MOU is unsigned. (*Compare* Horn Dec'l, Ex. 3 at 1 *with* Opposition Brief at 5). The MOU contains various hand-written markups, but there are no factual allegations

---

face of the Complaint. *See Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (stating that if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).") Kissler may re-raise the statute of limitations argument later in the litigation.

in the Complaint, nor is there any indication in any document, annexed to, or relied upon in the Complaint, that Kissler accepted the MOU and the hand-written markups. (*See* Horn Dec'l, Ex. 3). Similarly, the Trustees fail to allege facts sufficient to demonstrate that the MOU was intended as a binding contractual agreement and that the parties undertook performance in compliance with it. *See Comerata*, 145 A.2d at 475 (finding that "[t]he undertaking of performance, concurred in by the other party, is generally taken as strongly probative of an intention" of the parties to be bound by the agreement); *Williams v. Newark Beth Israel Med. Ctr.*, 322 F. App'x 111, 113 (3d Cir. 2009).

To survive dismissal under Rule 12(b)(6), a complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Here, even taking the factual allegations as true, the Trustees' pleading does not allege sufficient facts to establish the elements of a breach of contract claim. The Court will thus grant Kissler's motion to dismiss the claim arising under the MOU.

## V.    CONCLUSION

For the above reasons, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part. Defendant's motion to dismiss Plaintiff's claim for $46,319.84 under the CBA is **DENIED**. The motion to dismiss Plaintiff's claim for $98,970.50 under the MOU is **GRANTED** and the claim **DISMISSED WITHOUT PREJUDICE**. The Court grants Plaintiff thirty days to file an Amended Complaint consistent with this Opinion. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 25, 2015**